## OCKINGTON *v.* RICHEY.

A sale of lumber to be taken and measured from a larger bulk, and to be an average lot as to thickness and quality, is not complete, even as between the parties, until selected and measured.

A mere license, after the contract of sale, for the purchaser to measure and take the lumber, may be revoked, and for taking it after such revocation the purchaser would be a trespasser.

Proof that, before the lumber was delivered, the seller was summoned as the trustee of the purchaser, was charged for the lumber, and the same was thereupon delivered to the officer, and applied upon the purchaser's debt, must be regarded as equivalent to the delivery of the lumber to the purchaser himself.

The exception that the judgment in the foreign attachment was not between the same parties, cannot be sustained.

TRESPASS, for seven thousand feet of hard wood lumber, the property of the plaintiff, and alleged to have been taken, carried away, and converted to their own use, by the defendants, on the 15th day of December, 1858, and on divers other days between that time and the date of the plaintiff's writ, which was April 8, 1859. Plea, the general issue, and brief statement: (1) That the trespass complained of was done under a license from the plaintiff to George Richey, one of the defendants, and that the other defendants acted as his servants; (2) That the trespass complained of was committed under a license from the plaintiff to the defendants, George and William K. Richey, and that the other defendants were the said George Richey's servants.

The plaintiff called his father, Benjamin B. Ockington, as a witness, who testified that the plaintiff owned a quantity of hard wood lumber, which was stuck up in the mill-yard of the witness in several piles; that the plaintiff some time before the occurrence of the alleged trespass went to Massachusetts to work at his trade, leaving his business generally, and the charge of his lumber, with

witness; that on the 15th and 16th days of December, 858, during the absence of the plaintiff, the defendants took and carried away about five or six thousand feet of the aforesaid lumber, although they were forbidden to do so by the witness, acting in behalf of the plaintiff.

Upon cross-examination the witness stated that some time in 1856 the plaintiff delivered to William K. Richey, one of the defendants, fifteen hundred feet of the aforesaid lumber at one time, and one hundred and fifty-four feet at another, and about the same time the plaintiff told the witness he had purchased a seraphine of the said William K. Richey, and agreed to give him eight thousand feet of the aforesaid hard wood lumber for it, the said fifteen hundred feet and one hundred and fifty-four feet being parcel thereof; that the plaintiff told the witness that the eight thousand feet he had sold to said Richey was to be an average lot as to thickness and quality, compared with the entire quantity of the plaintiff's hard wood lumber piled up in the mill-yard aforesaid; that said Richey was to have it when he would come and measure it out; that no particular pile was specified from which said eight thousand feet was to be taken, and that the fifteen hundred feet and one hundred and fifty-four feet, above mentioned, were taken soon after the trade was completed. The seraphine was delivered to the plaintiff at the time of the trade, and before any of the lumber was delivered or taken.

The witness also testified that the five or six thousand feet which the defendants took and carried off on the 15th and 16th days of December, 1858, were an average lot as to thickness and quality compared with the rest of the plaintiff's hard wood lumber. Upon being reëxamined, the same witness testified that he did not hear the trade between the plaintiff and William K. Richey, and knew only what his son told him about the same; that the plaintiff wished to have Richey get the lumber away as

fast as he could; that he heard nothing said by the plaintiff about the measure of the lumber; that the plaintiff said he bought the instrument, and gave eight thousand feet of the aforesaid hard wood lumber for it. Also, that at the time this hard wood lumber was sawed and piled up as aforesaid, the plaintiff was in possession of the saw-mill, and the premises and land on which it was piled, and continued to occupy and possess the same up to November 25, 1858; that when the defendants took the lumber, on the 15th and 16th days of December, 1858, they had a surveyor with them, who surveyed off whatever they took and carried away.

The plaintiff here rested his case, and the defendant moved for a nonsuit, which the court ordered on the ground that, upon the evidence, the property had passed to the defendants, and that they were not liable in this action; the plaintiff excepting. Whereupon, by leave of court, the plaintiff introduced the record of a suit in favor of one Sparrow against William K. Richey, one of the defendants in this suit, and Horace H. Richey, as partners under the firm W. K. and H. H. Richey, as principals, and the plaintiff as trustee; by which record it appeared that the money, goods, rights and credits of the principal defendants, or either of them, in the hands of this plaintiff, were attached; that the action was entered, and the trustee disclosed the agreement about the lumber substantially as before stated, though without any reference to a license; that judgment was rendered by the Court of Common Pleas, Coös county, November term, 1858, and the trustee charged for the lumber, except the amount already delivered as before stated; that execution was issued for the lumber in his hands, which was delivered to the officer having such execution, who made sale of the same, and applied the avails thereof in part satisfaction of the execution issued against the principal defendants on said judgment. To the reception of this record

the defendants excepted, but the exceptions were over-ruled, and the evidence read without any objections to the regularity of the proceedings ; after which the defendants moved for a nonsuit, which was ordered against the plaintiff's exception ; and the questions arising in the case were reserved for the consideration of the whole court.

*G. C. Williams*, for the plaintiff, contended that the contract of sale was not executed, and that the defendants should have resorted to an action on the contract rather than attempt to pay themselves out of the plaintiff's piles of lumber ; but, as between the buyer and the seller, there remained something to be done requiring an exercise of discretion and mutual agreement in selecting an average lot of the lumber, and that, until that was done, no title to any specific lumber vested in the vendee ; and he cited *Davis* v. *Hill*, 3 N. H. 382 ; *Messer* v. *Woodman*, 22 N. H. 172 ; *Warren* v. *Buckminster*, 24 N. H. 386, and cases there cited. He also contended that the question of license did not arise, because, if any existed, it was revoked before the lumber was taken away. As to the record of the foreign attachment, he argued that it was immaterial whether the lumber actually vested in Richey, or the contract was to be regarded as executory, because in either aspect it was the subject of the trustee process.

*Whidden*, for the defendants, contended that the property in the lumber did pass to the vendee, and cited *Waldron* v. *Chase*, 37 Me. 414 ; *Page* v. *Carpenter*, 10 N. H. 77 ; *Felton* v. *Fuller*, 29 N. H. 121 ; *Whitehouse* v. *Frost*, 12 East 614 ; *Damon* v. *Osgood*, 1 Pick. 476 ; *Wood* v. *Manly*, 11 A. & E. 34 ; *Nettleton* v. *Sikes*, 8 Met. 35 ; *Woodley* v. *Bunn*, 1 C. & P. 593 ; *Rhodes* v. *Thwaites*, 6 B. & C. 388 ; 3 Stephens' N. P. 2645. He also urged that the record of the foreign attachment was not admissible, because not between the same parties, and cited 1 Gr. Ev., sec. 522 ; 2 Phill. Ev.

5, 6; *King* v. *Chase*, 15 N. H. 9; *Warren* v. *Cochran*, 27 N. H. 339. He further contended that if this record was admissible, that on the 15th and 16th of December, when the defendants took the lumber, it was not the property of this plaintiff, as the trustee execution had been satisfied on the 11th of December, 1858, and the lumber on that day passed to the sheriff.

*Bingham*, on the same side, to the point that the property had passed to the vendee, cited, in addition to the authorities cited by Whidden, *Riddle* v. *Varnum*, 20 Pick. 280; *Macomber* v. *Parker*, 13 Pick. 182; and to the point that the plaintiff had given a license to take the lumber which he could not revoke, he cited *Wood* v. *Manly*, 11 A. & E. 34; *Nettleton* v. *Sikes*, 8 Met. 35; *Gale* v. *Seeley*, 15 Vt. 241; *Folsom* v. *Morse*, 19 Me. 253. He further contended that the property in this lumber was in William K. Richey alone, and could not be taken for a partnership debt, until the private debts were satisfied.

*Benton & Ray*, and *Fletcher*, on the same side, referred to the same authorities, and in addition cited Noy's Max., ch. 42; 2 Stark. Ev. 888; *Phillimore* v. *Barry*, 1 Camp. 513; *Ellmore* v. *Stone*, 1 Taunt. 458; *Parling* v. *Baxter*, 6 B. & C. 360; 2 Camp. 240.

BELLOWS, J. The case, we think, comes within the principle of *Davis* v. *Hill*, 3 N. H. 382; *Messer* v. *Woodman*, 22 N. H. 172; *Warren* v. *Buckminster*, 24 N. H. 337; *Fuller* v. *Bean*, 34 N. H. 290; and the same doctrine is laid down in 2 Kent Com. 496, 675, and notes. As between the buyer and seller something remained to be done; the lumber was to be separated from a larger quantity; selected so as to make an average lot, and measured, before the sale was complete. It is true that the parties may make a contract of sale by which a present right of prop-

erty shall pass, before the price, weight or measure is determined ; as if the goods are actually delivered, with the purpose of vesting the property, and suitable provision made for determining, afterward, the price, weight or measure. But in this case no specific lumber was designated, and therefore it was in no condition to be delivered. The selection and measuring remained to be done, until which the vendee acquired no title to any specific portion of the entire bulk ; nor does the delivery of a part affect the vendee's title to the residue, although in questions arising under the statute of frauds it would be otherwise. The cases of *Hanson* v. *Meyer*, 6 East 614, and *Simmons* v. *Swift*, 5 B. & Cr. 857, are decisive on this point.

The case of *Hanson* v. *Meyer* was a sale of an entire lot of starch lying at a warehouse of a third person, at a price agreed per one hundred weight, and an order to the warehouseman to weigh and deliver the entire lot. The order was presented, and part weighed and delivered, but before the whole was delivered the vendee became bankrupt. In a suit by the assignees, it was held that the weighing of the starch preceded the vesting of the property, and that the assignees could not recover. So in the case of *Simmons* v. *Swift*, where an entire lot of bark was sold, and a written agreement made as follows : "I have this day sold the bark stacked at Redbrook at £9 5s. per ton of twenty-one hundred weight, to Hezekiah Swift, which he agrees to take and pay for on the 30th of November ;" and both parties signed it, and part of the bark was weighed, and delivered and taken away. Afterward the remainder was injured by an unusual flood, which overflowed the bank on which it was deposited, and the vendee refused to pay for it. In an action by the vendor for the price, it was held that the property in the residue did not vest until the weight was ascertained. In both these cases the subject matter of the sale was clearly

designated, and nothing remained to be done but to determine the weight.

The same general doctrine is held in *Fuller* v. *Bean*, 34 N. H. 290, where it is said by *Bell*, J., that if the goods are sold by number, weight or measure, or the like, the sale is *primâ facie* not complete till their quantity is ascertained, and if they are mixed with others, not until they are separated and designated. It is held in that case, that when something remains to be done before the sale is complete, it is immaterial whether it is to be done by the buyer or seller. There is, doubtless, some conflict of authority as to the application of the principle, but we consider the doctrine we have stated as well settled in this State.

Upon these principles the contract of sale must, in the case before us, be regarded as executory, and as vesting no present right of property in the vendee. Nor is there any thing in the evidence reported that will sustain the nonsuit upon the ground of a license. Undoubtedly a license to come and take the lumber would be a good defence to an action of trespass; but the statement of the plaintiff that "Richey was to have it when he would come and measure it out," with the other circumstances stated by the witness, could not, we think, be regarded as conclusive evidence of such license, but, at most, only evidence for the consideration of the jury. It does not appear whether this was said to Richey at the time of the sale, or afterward; whether it was a mere naked license, or part of the contract of sale. However that may have been, it appears that the parcels of fifteen hundred feet and one hundred and fifty-four feet were delivered personally by the plaintiff to Richey, and we think the jury might have been warranted in finding on the evidence that, in the act of separating, measuring and delivering the lumber, the plaintiff was at least to take part; beside, if it were a mere license, and made after the

contract of sale, as the jury might legally have found, it appears to have been revoked by the plaintiff's general agent, who forbid the taking of the lumber; his authority to act in behalf of the plaintiff does not seem to be questioned, and this is a sufficient revocation of a mere unexecuted license. *Sampson* v. *Burnside*, 13 N. H. 264; *Marston* v. *Gale*, 24 N. H. 176.

It is unnecessary to examine the other point, as the nonsuit must be set aside; although it would seem to be quite clear that, if the proceedings in the foreign attachment were regular, the lumber was properly taken from the plaintiff, as the trustee of Richey, one of the principal defendants in that process. It would be no objection that the suit was to recover a debt of the firm of which Richey was a member, for, so far as the defendant Richey is concerned, his private property might be taken for the partnership debts in this mode as well as any other. *Stone* v. *Dean*, 5 N. H. 502; *Parker* v. *Guillon*, 10 N. H. 103. So the lumber might be taken from the plaintiff, whether the contract of sale be regarded as executed, or merely executory; and being taken by lawful process, and applied to the payment of Richey's debt, and therefore coming to his use, it must be regarded the same as if he had personally received the lumber. It is objected that the judgment, being between other parties, is not admissible as evidence here; but we think this objection cannot be maintained. By the process of foreign attachment, the credits and effects of a debtor, in the hands of a third person, may by law be taken, and if the proceedings are regular, such third person cannot, at the suit of the debtor, be compelled to account for the same effects or credits. Beside, as respects the principal debtor, he cannot be regarded as a stranger to the suit, being necessarily a party, and having an opportunity to contest the claim against him. These cases, like a judgment to show the amount that a surety has been compelled to pay for

his principal, or a principal for the default of his agent, are exceptions to the general rule. 1 Gr. Ev., sec. 527.

The nonsuit must, therefore, be set aside.